990 So.2d 1234 (2008)
Angel JOMOLLA, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 3D07-2857, 3D06-3093.
District Court of Appeal of Florida, Third District.
September 24, 2008.
*1236 Bennett H. Brummer, Public Defender, and Dorothy F. Easley, Special Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Linda S. Katz, Assistant Attorney General, for appellee.
Before SHEPHERD and ROTHENBERG, JJ., and SCHWARTZ, Senior Judge.
ROTHENBERG, J.
Angel Jomolla ("the defendant") appeals from a final order of conviction for battery evidencing prejudice and the trial court's subsequent denial of his motion to correct a sentencing error. On appeal, the defendant alleges that his conviction must be reversed and a new trial granted because: (1) the jury was instructed on an alternative theory of battery not charged in the information; (2) prejudicial evidence was improperly introduced at trial; (3) section 775.085, Florida Statutes (2002), Florida's "hate crime" sentencing statute, is unconstitutional both on its face and as applied to him; and (4) the Miami-Dade County Miranda Form, which was used to inform the defendant of his rights was legally insufficient. We affirm.

BACKGROUND INFORMATION
The defendant was charged with one count of battery evidencing prejudice under sections 784.03 and 775.085, Florida Statutes (2002), for an incident that occurred at a convenience store in Cutler Ridge. The facts are as follows. The defendant entered the convenience store, selected items for purchase, and was paying for his purchases, when the victim, Edwin Middlebrooks ("Middlebrooks"), entered the store, selected his purchases, came to the counter to pay for them, and stood behind the defendant. The defendant, who is white, asked Middlebrooks, who is black, if he had a problem with him. Middlebrooks responded that he had no problem with him, and asked the defendant if he had a problem with him. In response, the defendant stated that he had a problem with Middlebrooks' "kind," that "they" should all go back to Overtown where they belonged, and that he did not like "n____s."
The defendant paid for his purchases and began to exit the store, when he changed his mind, returned, approached Middlebrooks, and exchanged words with him. Middlebrooks told the defendant that if he wanted to hit him, he could do *1237 so. In response, the defendant punched Middlebrooks in the face. When the defendant attempted to strike Middlebrooks with a cane, Middlebrooks wrestled the defendant to the ground and was able to restrain him. Middlebrooks testified that he released the defendant after the defendant agreed to stop fighting. However, after Middlebrooks released the defendant, the defendant struck Middlebrooks with his cane, causing the cane to break and Middlebrooks to suffer a lesion requiring four stitches over his right eye.
The information charged the defendant with committing a battery upon Middlebrooks by intentionally touching or striking Middlebrooks, and in the course of committing said act, did evidence prejudice based on the race of the victim by telling the victim that he was not in the right neighborhood, he should go back to Overtown, and by calling him a "n____." The jury found the defendant guilty of committing a battery upon Middlebrooks and additionally found that the battery was motivated by the defendant's racial prejudice. The trial court sentenced the defendant as a habitual violent offender to seven years imprisonment with a mandatory minimum of five years under sections 784.03, 775.085, and 775.084(4), Florida Statutes (2002). On October 5, 2007, the trial court issued its denial of the defendant's Florida Rule of Criminal Procedure 3.800(b) motion to correct a sentencing error.

LEGAL ANALYSIS

The Jury Instruction
The defendant claims that the trial court committed fundamental error by instructing the jury on an alternative theory of battery that was not charged in the information. He argues that fundamental error occurred because it is impossible to determine whether he was convicted under the charged or the uncharged theory of the offense.
Section 784.03, provides two alternative ways in which a battery may be committed: (1) by actually and intentionally touching or striking another person against his will; or (2) intentionally causing bodily harm to another person. In this case, the information charged the defendant with committing a battery upon Middlebrooks by "actually and intentionally touching or striking him," as provided in section 784.03(1)(a)1. The trial court, however, instructed the jury as to both forms of battery. We agree with the defendant that this was error.
Jury instructions, however, are subject to the contemporaneous objection rule, and absent an objection at trial, the objection can be raised on appeal only if fundamental error has occurred. See State v. Delva, 575 So.2d 643, 644 (Fla. 1991) (holding that error in failing to instruct the jury on an element that did not constitute fundamental error was not properly preserved for appellate review).
The record reflects, and the defendant admits, that his trial counsel failed to object to the jury instructions provided by the trial court. The defendant, however, argues that fundamental error occurred, requiring a new trial. Fundamental error may occur where an offense can be committed in more than one way, the trial court instructs the jury on an alternative theory not charged in the information, and the jury returns a general verdict of guilty without specifying the basis for the conviction. Eaton v. State, 908 So.2d 1164, 1165 (Fla. 1st DCA 2005) (finding fundamental error where the jury was instructed on an alternative theory not charged in the information); see also Debose v. State, 920 So.2d 169, 169 (Fla. 1st DCA 2006); *1238 Braggs v. State, 789 So.2d 1151, 1154 (Fla. 3d DCA 2001).
In State v. Weaver, 957 So.2d 586 (Fla. 2007), the Florida Supreme Court clarified that a fundamental error occurs only in those trials where the uncharged theory included in the jury instruction was actually relied upon by the State and was contested by the defense. See also Beasley v. State, 971 So.2d 228, 230 (Fla. 4th DCA 2008) (finding that a jury instruction on an alternative theory of child abuse not charged in the information did not rise to the level of fundamental error where the State did not offer pertinent evidence or argument directed at the alternative theory).
In the instant case, the prosecution did not rely upon the uncharged theory that the battery was committed by intentionally causing bodily harm to the victim, and did not argue this uncharged theory in its closing argument. More importantly, the record reflects that the defendant admitted to striking the victim in the face against his will "[b]ecause he was in my space" (meaning that the victim was standing too close to the defendant at the check-out counter), and striking the victim with his cane, the theory charged by the State in the information.
Because the erroneous jury instruction did not concern a critical and disputed jury issue, and the State did not argue the erroneous theory or rely upon it in the prosecution of its case, we find that the trial court's inclusion of the alternative theory in its instructions to the jury, absent an objection by the defendant, did not constitute fundamental error.

The Trial Court's Evidentiary Rulings
The defendant argues that the trial court committed reversible error in admitting Officer Payen's testimony. Officer Payen, who is of African American descent, testified that as he placed the defendant in the back seat of the police car, the defendant called him a "n____" told Officer Payen that he did not belong in that neighborhood, and threatened to kill him. The defendant claims this evidence was improperly admitted because it was not relevant to the charged offense, and constituted improper character evidence. We disagree.
We begin with the basic premise that for evidence to be admissible, it must be relevant. See § 90.402, Fla. Stat. (2002); Gore v. State, 719 So.2d 1197, 1199 (Fla.1998). However, when the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice, it is inadmissible. § 90.403, Fla. Stat. (2002). "`Where a trial court has weighed probative value against prejudicial impact... an appellate court will not overturn that decision absent a clear abuse of discretion.'" Sims v. Brown, 574 So.2d 131, 133 (Fla.1991) (quoting Trees v. K-Mart Corp., 467 So.2d 401, 403 (Fla.4th DCA 1985)). Additionally, the evidentiary rulings made by the trial court are subject to the harmless error test. See Denmark v. State, 927 So.2d 1079, 1082 (Fla. 2d DCA 2006) (applying the harmless error test to the erroneous admission of evidence); Wise v. State, 860 So.2d 1096 (Fla. 5th DCA 2003).
The defendant claimed at trial that he struck Middlebrooks because Middlebrooks provoked him, not because he was prejudiced against African Americans. Thus, the defendant's motivation was a material issue in dispute. The defendant's belligerence and racial slurs against Officer Payen, who like Middlebrooks, is a black man, shortly after the charged incident, was relevant to the issue of the defendant's motivation in striking Middlebrooks. Because the State was required to prove that the battery was motivated by *1239 racial bias, the defendant's comments and actions immediately after the battery were relevant. See Irizarry v. State, 905 So.2d 160, 164 (Fla. 3d DCA 2005) (finding that the collateral evidence was relevant to prove the defendant's intent, the absence of mistake, his relationship with the victim, and to dispute the defendant's defense); Miller v. State, 667 So.2d 325, 328 (Fla. 1st DCA 1995) (holding that collateral crimes evidence is admissible to disprove a defendant's theory of defense or to establish the intent of the defendant).
Because the defendant admitted his general racist beliefs and to making the specific racist comments directed towards Middlebrooks prior to committing the battery upon him, we conclude that any error in admitting the defendant's additional racial slurs directed toward Officer Payen was harmless beyond a reasonable doubt. See Craig v. State, 510 So.2d 857 (Fla. 1987) (holding that the trial court's erroneous admission of evidence of the defendant's drug use was at most harmless error where there was ample direct evidence of the defendant's guilt); see also Bricker v. State, 462 So.2d 556 (Fla. 3d DCA 1985); Clark v. State, 378 So.2d 1315 (Fla. 3d DCA 1980).

The Constitutionality of Section 775.085
The defendant also alleges that section 775.085 is unconstitutional on its face and as applied to him. The defendant contends that section 775.085 violates his First Amendment rights under the United States Constitution and Article I, section 4 of the Florida Constitution. This argument, however, has been rejected by the Florida Supreme Court in State v. Stalder, 630 So.2d 1072, 1076 (Fla.1994). In Stalder, the Court held that section 775.085 applies only to bias-motivated crimes that is, those crimes wherein "the perpetrator intentionally selects the victim because of the victim's `race, color, ethnicity, religion, or national origin.'" Id. at 1077. The Florida Supreme Court in Stalder upheld the facial constitutionality of section 775.085 by limiting the statute to those crimes that are motivated by prejudice, as opposed to those incidents where the accused merely exhibits prejudice during the commission of the crime.
In arguing that the statute is unconstitutional as applied to him, the defendant claims that the verdict form utilized by the trial court failed to comply with the Stalder requirement that the State prove that the defendant intentionally selected Middlebrooks because of Middlebrook's race, color, ethnicity, religion, or national origin. We disagree. The verdict form used in this case required the jury to find that "[t]he Battery was motivated by the defendant's racial prejudice," and the standard jury instruction provided by the trial court regarding the element of prejudice, instructed the jury that if they found that the defendant "intentionally selected Edwin Middlebrooks because of the perception or knowledge [of his race], [they] should find the defendant is motivated by prejudice to commit the crime." The jury instruction and verdict form used in this case correctly reflect the requirements specified in Stalder.
Lastly, the defendant claims that section 775.085 is unconstitutional because it subjects him to double jeopardy in violation of the Fifth Amendment. The Fifth Amendment's double jeopardy clause prohibits prosecuting an individual for the same offense after an acquittal, for the same offense after a conviction, and for multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The defendant claims that the enhancement of his sentence under section 775.085 constitutes a double *1240 jeopardy violation because it punishes him for his act of committing the battery and for his thoughts in committing the battery. This argument is without merit.
In State v. Darst, 837 So.2d 394 (Fla. 2002), the Florida Supreme Court explained that the reclassification of an offense based upon the status of the victim does not violate double jeopardy principles. Likewise, in Mills v. State, 822 So.2d 1284 (Fla.2002), the Florida Supreme Court found no double jeopardy violation where the defendant's offense of battery was reclassified from a misdemeanor to a felony because it was committed against a law enforcement officer, and then the conviction was enhanced because the defendant qualified to be sentenced as a habitual felony offender. The Florida Supreme Court specifically noted that "there is a qualitative difference between a statute which reclassifies enumerated offenses committed against law enforcement officers and enhancement statutes such as the habitual offender statute, `which cut across some or all criminal statutes.'" Mills, 822 So.2d at 1287.
The battery in the instant case is strikingly similar to the battery in Mills. The battery in Mills was reclassified due to the status of the victim (a law enforcement officer). The battery in the instant case was reclassified because the battery on the victim was racially motivated. The wording of the statute confirms that the commission of a battery motivated by the perpetrator's racial prejudice against the victim is, in fact, a reclassification of the offense, rather than an enhancement:
775.085. Evidencing prejudice while committing offense; reclassification.
(1)(a) The penalty for any felony or misdemeanor shall be reclassified as provided in this subsection if the commission of such felony or misdemeanor evidences prejudice based on the race, color, ancestry, ethnicity, religion, sexual orientation, national origin, mental or physical disability, or advanced age of the victim[.]

The Miami-Dade County Miranda Form
The final argument raised by the defendant in this appeal is that his pretrial statements should have been excluded because the Miami Dade County Miranda[1] form was legally inadequate to apprise him of his rights because the form did not advise him that he had the right to consult an attorney before being questioned by law enforcement and that he could terminate the questioning at any time. This Court has already addressed the Miranda form used by the Miami-Dade Police Department to advise suspects of their rights per Miranda. In Everett v. State, 893 So.2d 1278, 1284 (Fla.2004), the Florida Supreme Court found that Miranda only requires law enforcement to issue four warnings prior to initiating custodial interrogation:
(1) that the individual has the right to remain silent, (2) that anything the person says may be used in court, (3) that the individual has the right to have an attorney present during questioning, and (4) that if the individual cannot afford an attorney, one will be appointed for him before questioning.
Accord State v. Roman, 983 So.2d 731, 735 (Fla. 3d DCA 2008).

CONCLUSION
Having found no error, we affirm the defendant's conviction and sentence.
Affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).